Good morning. Good morning, Your Honours. May it please the Court. Nicolette Glazer, appearing on behalf of the Plaintiff Appellants Yavor and Yanita Kuzov. I would like respectfully to reserve five minutes of my time for rebuttal. Keep your eye on the ball. Thank you, Your Honours. Your Honours, this case comes to the Court on a granted motion under Rule 12b1. However, Your Honour, it is clearly not supported by binding United States precedent. This is a Kafkaesque tale about a brother and a sister that started 15 years ago and the end is not in sight. Yavor and Yanita came to the United States with a valid immigrant visa. They received valid lawful green cards. Each of them was able to beat the government in their effort to take away their green cards. Each applied for naturalization. Each passed the examination. And after they did not receive a decision, they filed a lawsuit against the government under 14- Counsel, with respect, I'm going to cut to the chase. You've got a very different situation here in that the brother became a naturalized citizen because of his military service. His sister did not have military service. The brother did. He's naturalized. The case that he had before is moved. It's gone. There's no need to do anything further because he has already achieved all that the government can give him there. Isn't that correct? Respectfully, Your Honour, I believe the government and the district court, this confuses two things. There is a difference between a military naturalization under Section 328 and 329 and naturalizing while in the military. Well, there's no doubt that Yavor was in the military when he received his citizenship certificate. You're suggesting that a person becomes naturalized changes the nature of the citizenship? Apparently it does, Your Honour, because- What case can you cite to us? Well, I will point the court to the actual statute, and that is 316 compared to 329. 316- But those are ways in which you can become naturalized, right? That is correct, Your Honour. What I'm asking you is didn't the brother become a naturalized citizen? Right, he did. Okay, so he has achieved all that the district court could do by the other action, right? By Section 1447. But it doesn't matter how, he achieved the result of naturalized citizenship. Correct. The dispute beyond that is as to his right to not have the government claim that he obtained citizenship without having a green card. And that is 329. What's the legal consequences of that, though? I mean, I know you would love to have a declaration that he was properly here and that he was- or the citizenship was awarded to him. But now that he is a citizen, I'm just going to ask the same question that my colleague asked. Forget how he got there, but he is a citizen now. Does he have any different rights than if he was a citizen that came in under 1447 or 130 rather than through military service? Well, Your Honour, he does because he is apparently treated by the government as a second-class naturalized citizen. Why? Don't tell us the label. What right, what one thing can he not do which he could have done had he gotten his citizenship through the I-30 and through Section 316 and 1447? He could not petition for his mother for a green card. His I-130 was denied. But if he had obtained his citizenship under 316, ergo he was a lawful permanent resident, the government denial of the I-130 goes up in smoke. Just a minute. I'd like to know the case or the statute which suggests what you just said. Well, Your Honour- I looked all around. I'm in the same boat as my colleagues. I looked all around to try to find out what he could not do with the citizenship he got. And there's no statute that says he can't do something. I agree- There's no case law that says he can't do something. He can do everything any other naturalized citizen can do. I can't find anything that he can't do. I know in your brief you're talking about, well, they could come back and talk about this or they could come back and talk about that and they could try to get it away from him. But that's assuming something that's absolutely hypothetical, no question. There's nothing in this record that suggests they're even going to do that. So, again, I'm back to my colleagues' questions. I can't find anything he can't do that every other naturalized citizen can do. I agree. He shouldn't be. But he filed an I-130 petition, which is- Wait a minute. That I-130 is beyond. He's gone past that. Now he's got naturalization, whether he got an I-130 or whether he didn't. There's nothing that suggests because he filed one and didn't go on from there, he can't do something. If he is found to be a naturalized under 329, then there is a provision in that military naturalization that says he is discharged dishonorably and doesn't serve five years. Then his citizenship can be taken away. Now, my client was required to show a green card when he enlisted. If the government is as he's saying now, he did not have a green card, then the Army can certainly point to him and say, Well, you didn't tell us you were an illegal alien. So we're supposed to take this hypothetical that you come up with that has no basis in the record and make a decision based on that. I mean, my worry is that you can come up with all kinds of hypotheticals that you say might happen or could happen, and it doesn't have any basis in this record. Well, Your Honor, I respectfully disagree. I think the question here is whether there is a mootness issue. This is not a merit. It is a question of standing. And in Spokane, the Supreme Court clearly reiterated that violation of statutory and procedural rights could confer standing. We are here on a standing and mootness issue. We are not here to determine whether these people have stated causes of action. I will respectfully point that two motions under Rule 12b-6 have been denied. So the record comes here as these two individuals have sustained their burden to plead sufficient causes of action, including for a constitutional violation and a declaratory review. And if I read those district court decisions in those particular matters under 12b-6, and I read the new court decision under 12b-6 where mootness was the ground, I can honestly say there's a difference between the motions made then and the 12b-6 motion made now after he's already naturalized. Your Honor, I believe that the last motion did not at all raise 12b-6. And so the government could have brought an appeal as to whether there were formally based causes of action. They didn't. Let's move to Yanira. Yes. Yanira. Yes, Your Honor. Your application has now been adjudicated. It was denied. Why is that not moot? Well, Your Honor, first of all, the denial that was issued was, I believe, void. And that is because the government abstained a remand that they could not have obtained. At the time they requested it. Do you have an appeal pending on that, administrative appeal? Are you challenging that administratively? No, Your Honor. No, okay. No. Well, just a minute. My colleague's question is important. At the time that the USCIS denied this application, you could have appealed at that point their denial, right? The denial of the application, yes. But you didn't. No, you have not. So any of the claims in the USCIS determination that you could have appealed, you waived the appeal. You did not appeal them. Oh, we appealed administratively. It went in front of the judicial office within the USCIS. But that is not before the court. What we are attacking is the 2012 denial that was issued before the government obtained an unrestricted remand. Now, that denial was one year before the government asked for a remand. Now, if that was the case, the district court had no jurisdiction to send the 1447B back to the USCIS. Did you appeal that order? We appealed it when there was a judgment. Before that, it was not unappealable. There was a judgment. The district court sent that back to the USCIS. Yes. They said that's where it's going to go. And even if they abused their discretion, you had a duty to challenge it. Did you ever challenge it? Yes. Ms. Kuzova did file an administrative appeal with the USCIS from the 2013 denial. I am talking about- You missed my question. My question is not what she did with the USCIS judgment. It is what she did with the district court order that sent it to the USCIS. Well, we couldn't appeal at that time because the court did not certify it under Rule 54B. You asked for the certification. We objected to that, absolutely. Did you ask? No, we did not. You didn't ask to appeal it. You didn't ask to be able to come up. It went down to the USCIS. They had a hearing. You didn't appeal. Well, you say you appealed to the USCIS. It's not in the record. And have they ruled on the order, on the USCIS order? Yes, they have. And you lost? Yes. So everything you say the USCIS did wrong administratively, you lost. Everything you could have appealed from the district court's order, you didn't ask to appeal, and you didn't appeal. Now you want me to do something about it. Well, Your Honor, I think the question, perhaps I'm not understanding, but the remand was not an appealable order until there is a final judgment. The final judgment came when the district court found that all claims are moot. At that time, we appealed. Every other decision within it merged with that judgment, and it's properly before the court. And what we are appealing is that the 1447B remand was without a jurisdiction. If it was a denial at the time, then it is clear that the district court had nothing to remand. All that she had to do is find that this case is gone. But what the district court did, you don't disagree that the district court could have remanded to the USCIS under regular authority? If there was a pending application, yes. But there was not, and the district court did not know. And nobody knew that the government, while this case was pending, has issued a denial under 8 CFR 335.6C. That was not disclosed to the district court and was never disclosed to the applicant. Everybody harbored under the assumption that we had a 2009 N-400 that was still pending. Do you want to save any of your time, Counsel? Yes. Thank you. The government. Good morning. May it please the Court. Jeffrey Robbins for defendants' appellees. Your Honors, this Court should affirm the district court's dismissal of Plaintiff Kuzov and Plaintiff Kuzova's complaint in its entirety for lack of standing, mootness, and in the Court's discretion under the Mandamus Act. In response to the Court's question. Counsel has, opposing Counsel has suggested that there are various types of naturalization. Are you aware of any such thing? Isn't a naturalized person imbued with all the rights of a naturalized citizen without distinction? Your Honor, there is no distinction between any form of naturalized citizen. That's the government's position. The example she gave was that if he was discharged from the military dishonorably, that that could be yanked. His citizenship could be yanked. That would not be true if he had gotten his citizenship through the regular procedure. Do you agree or disagree with that? I would agree with that. Okay. So that is a difference. He is less secure today because of the way he got his citizenship. He is more vulnerable today than he would have been otherwise. I agree with that, Your Honor. The vulnerability may or may not happen. That may be in the future. But today, in the present, he is more vulnerable than he otherwise would have been. No. Why? Well, that's not the case. Because if he had gotten it through the regular process, he would not have it subject to be revoked, even if he were discharged dishonorably. Your Honor, the record doesn't support that he was dishonorably discharged. I mean, does the record reflect? The record doesn't reflect. I thought he was still in the service. The record doesn't reflect. I don't know. Well, so according to the record, that uncertainty, that cloud hanging over him is still there. Your Honor, even if that cloud is hanging over him, that cloud is separate and apart from the challenge that he brings. No. The question is moot because you got exactly what you would have had if you had gone through the regular proceedings. And his answer is, I didn't get exactly the same thing. I've got an additional vulnerability I wouldn't have had before. That is his argument. And you agree with that, that he could, if he were dishonorably discharged, he could lose his citizenship? Yes, but that is a hypothetical that the record doesn't support. And let me back up to the government's primary submission with regard to Mr. Kuzov, and that's that he lacks standing to bring a claim with regard to any delay of his naturalization application. We're not talking about delay here. We're talking about the value of what he has today. The delays, of course, I think you're very solid on that. Listen, I can understand why you'd want to go back to your strongest points, but let's go back to your weaker point. I'm satisfied with your answer. I don't need to have you go back to it. I'm just suggesting that it's not helpful to me to go on to a point that I think you clearly are strong on. Yes, Your Honor. Can anyone who is naturalized have the naturalization removed for a variety of reasons that are set out in the statute? Absolutely, Your Honor, and primarily an individual who it is found not to have met the eligibility grounds for naturalization. Now, if they came in and said they were married and so on and they really weren't married, they could be removed. Correct. So basically the fact that the brother could lose his naturalization if he were discharged from the military, and we don't know whether he's still in the military, whether that's even possible. There are also a variety of other ways in which anyone, however they got their naturalization, could lose that naturalization based upon statute grounds. Correct. Just as Your Honor said, just as someone who if it is found they were engaged in a fraudulent marriage or they had some other criminal eligibility before they naturalized, that condition, precedent to naturalizing, that goes away, they are subject to denaturalization. He is subject to those, anyhow, whether he got his naturalization through the military or through the I-130, right? Yes, Your Honor, but if he... But he's got an additional vulnerability. The other people, if you had gone through I-130, they would not be subject to having their citizenship pulled if they were in the service and got dishonorably discharged. Yes, Your Honor, the government would categorize... Yes, you agree or disagree with that? I agree, but the government would categorize it, as Judge Smith did, and what I interpret your characterization to be as a similar disability in that it is a, if he is dishonorably discharged, it is a, essentially, even though it occurs after the fact, it's a condition precedent to naturalization that goes away, so his eligibility goes away. Condition precedent that he has that he would not have if he had gone through the I-130 approach. Yes, and the government's... Is that really clear? If a person becomes naturalized through the I-130 process and they were subsequently discharged from the military, would they not? They would if it impacted their good moral character. I'm not an expert in this, but my understanding is that the statute sets out a variety of ways that a naturalized person can lose their citizenship if certain things happen. My understanding, and I may be wrong about this, because they had military service or not, if they are subsequently dishonorably discharged, I think they can also lose their naturalization. Do you know one way or another on that? They can, and let me be candid on one point. In the course of naturalization, other than military naturalization, if an individual commits an act subsequent to naturalizing that would result in, for instance, their dishonorable discharge, if that act is subsequent to naturalizing and they didn't military naturalize it, I acknowledge that they would not be subject to the naturalization. There is, however, those circumstances remain hypothetical and the record doesn't support that. It is hypothetical that it would ever be invoked against him, but it is not hypothetical that today he is more vulnerable than he would be today if he had gotten a naturalization in another round. I understand Your Honor's point. The government's response is, however, once an individual is naturalized on one basis, there is no basis or reason or right. Well, let me ask this. Does it work in the opposite direction? Are there things that a person is vulnerable for if they had gone through the I-130 approach for naturalization, that they could get revoked that this claimant is free from by having gotten through the military? That is, are there things that he may have more vulnerable in one area, but are there other possible things where the I-130 people are more vulnerable than him in the military? Yes, Your Honor. You are? That is specifically the facts of this case and the claim that Plaintiff Kuzov makes. Give us one thing where he is less vulnerable than an I-130 claimant. He is not subject to denaturalization based on the government's belief that his mother engaged in a fraudulent marriage, which would render him ineligible for his green card. He is not subject to that. Good answer. Okay. Let's turn then to Yanita. Yes, Your Honor. Can I return to one brief point of Mr. Kuzov? Plaintiff makes the point that Mr. Kuzov also, as a naturalized, based on his military service, doesn't have the right to file an I-130 on behalf of his mother, and that is simply not the case. He has that right. He filed an I-130 petition on behalf of his mother. So he didn't naturalize based on that I-130 process, but he attempted to help his mother in her eligibility to remain in the United States by filing a petition on her behalf that was originally approved and then revoked, but not based on his lack of eligibility. It was revoked based on a finding that his mother was engaged in a fraudulent marriage under 8 U.S.C. 1154-C. With regard to Ms. Kuzov, the government's argument- That would have been true whether he had been naturalized through an I-130 process or the military process, right? Yes, although the same reasons why his mother was found ineligible would impact his eligibility for naturalization on another ground. With regard to Ms. Kuzov, as the court has noted, subject to the government's motion to remand and the court's granting that motion to remand, the government adjudicated and denied Ms. Kuzov's application for naturalization. I'll respond to her idea that the district court had no authority to do that because she had previously denied, if you will. The government has two primary responses to that point. The first is that isn't an argument that was raised below. It was raised for the first time in this court and so was never exhausted for a variety of reasons. The government acknowledges that Plaintiff Kuzov opposed the government's remand motion, but not on this ground that there was a prior denial. On the merits, the government has also addressed on its briefing that specifically Plaintiff Kuzov's assertion that there was a prior denial is simply not supported by the record. And the primary record citation is at page 100 of the record excerpts. And the government argues in its answering brief and today that what happened with Ms. Kuzov's case and is reflected by the record was that the government, as any court might, administratively closed consideration of its application. The argument that Plaintiff Kuzov makes in her pleadings and briefs based on the regulation at 8 CFR 335.6C, which the government acknowledges, were that to be the case, it provides a scenario where an individual who doesn't appear for their interview is subject to an automatic denial for abandonment. That is not supported by the record. The facts don't support that that happened here or that the agency invoked that regulation in administratively closing our naturalization application here. So this... Do we even have jurisdiction to consider an administrative... No. If it were a denial, that is something that could ultimately have federal court jurisdiction, but the record doesn't support that there was a denial here. And the... And do you... That the USCIS denies her... At that point that the... Appeal the USCIS decision to USCIS? Yes. And it was denied? And it was... Administratively, right? Yes. Because I didn't... And that may have happened subsequent to the briefing, and I apologize if there's been... So that's the end of the line administratively for her? It is the end of the line administratively. However, the statute gives Plaintiff Kuzova the opportunity to file a new complaint under 8 U.S.C. 1421C to seek de novo review of that naturalization denial with the district court and, quite honestly, to raise any claims or allegations with regard to her eligibility to naturalize. And so the complaint is initially pled as primarily a delay claim, but also seeks de novo review. The statute at 8 U.S.C. 1447B allows the court to either determine the matter or remand. The court remanded, and there was a decision. So the government's contention today is that that moots all of the claims that Ms. Kuzova has begun to exhaust the process, has exhausted the administrative process available to her and required by 8 U.S.C. 1446A. And now the remedy available to her is to file a new action under 8 U.S.C. 1421C. Yes, Your Honor, I still believe it would be timely. But, frankly, it isn't in the record that that's been exhausted. The remedy for the exhaustion and the denial is the filing of another suit, not the precedent, not the proceeding forth with the suit she now has, right? Yes. The one authority that's on point on this is this Court's decision in Hovsepian, which acknowledges that the district court had the authority to determine the case on the merits in the original suit filed under 1447B, but is not required to. And so here the district court made that decision not to determine it on the merits, and those merits would appropriately be brought before a district court under 1421C. I just don't want any misapprehension here. I think whether she can now file a separate claim, whether that separate claim would be barred by one or more limitations, times, or anything else, are not in this record. This Court is making no representations about whether she can or cannot file such a claim. And I take it that it is beyond your authority here today to make any representations to her whether she can or cannot. Yes, Your Honor, and nor would the availability of those options, or should the availability of those options, impact this Court's ultimate views. I just did not want out of this conversation to come a claim that somebody is representing, or a claim that she, in fact, has that right, when that's not really on the agenda today for us or for you. Yes, Your Honor. If there are no further questions, I would sum up by stating that the district court properly found that it lacked jurisdiction over Mr. Kuzov and Ms. Kuzova's claims with regard to their naturalization applications, and properly dismissed them for lack of standing, mootness, and in the Court's discretion under Vandemisek. And we ask this Court to refer. Thank you very much, Counsel. We have some rebuttal time, Counsel. Thank you, Your Honor. I just want to respond directly first to the issue of jurisdiction. Well, Your Honor, I believe that if the district court had no jurisdiction because of the denial under 8 CFR 335.6, that jurisdictional argument can never be waived. Second, Your Honor, I would like to go to Mr. Yavor Kuzov again. Can you repeat that first argument again? I just didn't hear the second half of your sentence. If they had jurisdiction, what? If the district court did not have the jurisdiction to remand because there was a denial pursuant to 8 CFR 335.6c, which is obviously the case, if the court will look at Ms. Kuzova's N-400 application on the first page, that's page 99, I believe, there is a notation that on December 8th, her application was administratively closed, 2010. 335.6 says one year later, by operation of the regulation, that application is deemed denied without further notice. So in 2011, that application was denied by operation of law. At that time, the U.S. district court had no authority to remand anything because there was no pending N-400. That jurisdictional argument cannot be waived and can be brought at any time, I believe. So you're saying that even from the get-go, this 130 consideration by the district court was without jurisdiction? That's correct, Your Honor. Nobody knew about it. How does that help you? Well, Your Honor, if the district court did not have the right to remand, the subsequent denial that they crafted in 2013 would be void because they had already What happens if that's void? Then what happens? She has a denied application under N-400. How is she any better off under your scenario than she is? Because that would be res judicata and we will not have the better crafted decision. Could she bring a new claim if your argument is right? Yes, and then she will be able to point to that decision and foreclose any argument of the government claiming res judicata based on this. You probably made that argument in the briefs, but I must admit the nuance of it, as you are now articulating it, escaped me. Did you make that argument in the briefs? We did it in our reply brief in response to their argument. In the reply brief? Correct. We made it clear. I think in the opening brief we did address the issue that that remand was improper originally. And the problem is if the N-1447B is gone, then the government cannot move the rest of the claim based on the 2013 denial. With respect to Yavor, the court asked if he was still in the military. I cannot say to today, but he was definitely in the military. He had a tour overseas and he was under doctor's observation. He was taking time to college, planning to go back. Does the record show whether he is in the military now? I don't believe that there is anything in the record as to today. But at the time it was clear before the court that he was still in the military, yes. Is he in the military? I believe, I'm not quite sure, but I believe that he is still enlisted. He is not an active duty mate because he's going to college. But I'm not quite sure. But he was certainly not discharged. Any other questions by my colleagues? Thank you both for your argument. Thank you, Your Honor. The case just argued is submitted.
judges: Ebel, M. Smith, N.R. Smith